## Jacob Haish v. Sarah Dreyfus.

### Gen. No. 4200.

1. . INTERROGATORIES—*presumption as to filing of.* In the absence of a showing as to the time when interrogatories to be propounded to a witness upon the taking of his deposition were actually filed, the presumption is that they were filed before the date fixed for the issuance of the *dedimus.*

2. DEDIMUS—*when should issue.* The issuance of a *dedimus* at a date later than that mentioned in the notice, is not ground for the suppression of a deposition where the interrogatories were filed in apt time and no injury appears to have resulted.

3. REFRESH RECOLLECTION—*right of witness to.* It is not proper to permit a witness to refresh his recollection from memoranda taken from a book kept by another.

4. FINDING OF COURT—*when not disturbed.* The finding of the court, in an action at law, will not be disturbed on appeal, notwithstanding incompetent evidence may have been admitted, if there is sufficient competent evidence to support it.

Action of assumpsit. Appeal from the County Court of DeKalb County; the Hon. WILLIAM C. DE WOLF, Judge presiding. Heard in this court at the April term, 1903. Affirmed. . Opinion filed October 8, 1903.

CARNES, DUNTON & FAISSLER, for appellant.

H. W. PRENTICE, for appellee.

Mr. Justice Farmer delivered the opinion of the court.

Appellee sued appellant in the County Court of DeKalb County for a balance claimed to be due her for goods sold appellant through his agent George H. Tadd.   The cause was tried without a jury and a judgment rendered against appellant for $500.   Before the case was called for trial, appellant made a motion to suppress the depositions of Ralph Dreyfus, Julius I. Block and Elmore S. Vickery, on the ground of irregularities in suing out the *dedimus* and taking the same; and that each interrogatory is leading in form and calls for evidence not the best, and that each answer is irresponsive, states conclusions of the witness and gives secondary evidence.   The motion was overruled, exceptions duly preserved and this ruling of the court is one of the errors assigned upon which appellant asks for a reversal of the judgment.

Notice was served on appellant March 19, 1902, that appellee would cause a commission to be issued out of· the clerk's office, March 31, 1902, to take the deposition of the witness Dreyfus, in the city of Buffalo, New York, upon written interrogatories, a copy of which was attached to the notice.   The commission was not issued until July 2, 1902, and the deposition was taken July 9.   A notice was also served upon appellant December 23, 1901, that appellee would on January 7, 1902, sue out of the clerk's office a commission to take the depositions of the witnesses Block and Vickery, in the city of Buffalo, New York.   The commission was issued January 8, 1902, and their depositions taken January 15.   No complaint is made of the ruling of the court, by appellant's counsel, in refusing to suppress the depositions of the witnesses Block and Vickery on account of the commission to take the same having been issued one day later than the date mentioned in the notice, but it is insisted that the court should have allowed the motion as to the deposition of the witness Dreyfus because the commission was not issued for more than three months after the date mentioned in the notice.   Notice was served on appellant, together with a copy of the interrogatories pro-

posed to be propounded to the witness, twelve days before the date fixed for suing out the commission. This afforded him ample time to prepare cross-interrogatories if he so desired, or to avail himself of his statutory right to have the deposition taken on oral interrogatories if he preferred. No cross-interrogatories were propounded to the witness, nor is it claimed that any were filed with the clerk at any time before the commission issued. It is not stated by counsel whether or not appellee's interrogatories were filed in the clerk's office before the date fixed in the notice for issuing the commission, nor does it appear from the motion made to suppress the deposition. No affidavits were filed in support of the motion nor any testimony heard showing that the interrogatories were or were not so filed, and the fair presumption is that they were filed before the date fixed for the issuing of the commission. This being true, we see no possible injury that could have resulted to appellant from issuing the commission at a later date than that mentioned in the notice. The deposition was not taken till July 9. He was deprived of no right afforded him by the statute because the commission issued at a later date than he had been notified it would. Abundant opportunity was afforded him to file cross-interrogatories, or give notice to take the depositions on oral interrogatories, and he did neither. If appellee's interrogatories, together with the notice and proof of service upon appellant, were not filed with the clerk before the date fixed for suing out the commission, a very different question would be presented. The suing out of the commission in July instead of March, as appellant was notified would be done, was an irregularity that worked no injury, and no error was committed by the trial court in refusing to suppress the deposition on that ground.

It is next insisted that the court erred in refusing to suppress that part of the deposition of Dreyfus where he swears to the amount of the claim sued on and refreshes his memory from a memorandum taken from appellee's books, and generally, that there is no competent testimony

Haish v. Dreyfus.

sufficient to sustain the finding and judgment of the court. While it was not proper for the witness to use a memorandum taken from the appellee's books to refresh his memory, yet the trial was before the court, and aside from this testimony, there was sufficient competent evidence to support the finding of the court as to the amount due. Tadd was in the store in the management of the stock until it was removed by appellant, and he testified the amount due appellee was between five and six hundred dollars; that he knew it was no less than five hundred dollars. He was unable to give the exact amount because the books in which the account was kept were in the safe, and that was taken out of the store by appellant when he removed the stock, and placed in his building back of the bank, and had not since been seen by the witness. In the absence of any other testimony on this point on either side, we think it sufficient to establish the amount which the court found due.

It is strenuously insisted by appellant's counsel that appellant was not the owner of the stock, but was only a creditor having a bill of sale to secure indebtedness due from Tadd to him, while, on the other hand, it is claimed that the stock belonged to appellant, that the credit was given him and that Tadd was in the management of the stock as his agent. It appears from the evidence that some time in 1895, Tadd gave appellant a bill of sale for the stock. At that time the store in which the stock was, was just across the street from appellant's bank and business office and in plain view from them. At about the same time a sign was placed on the store with appellant's name on it, and on one side of the name "watches" and on the other side "jewelry." The business remained there something like two years when it was removed to a building across the street where it remained until the stock was taken away by appellant in 1900. At the latter place no sign whatever was used. Just who placed the sign on the building bearing appellant's name is not stated in the testimony. Tadd swears he did not put it there and the natural and reasonable inference is, that appellant must have

caused it to be done himself. Tadd also testified that about the time appellant took the bill of sale for the stock, he told the traveling representative of appellee about it, and thinks he told him the stock belonged to appellant. He says, goods for the store were sometimes delivered to appellant at the bank and by him sent to the store, and gives one particular instance, when, just before Christmas time, as he was on his way home, he met appellant's wife and she handed him a parcel that had been opened and said it belonged to the store. The parcel was from a watch company. He also testified that all communications connected with the business were directed to appellant, and were received first at the bank and then brought over to him.

G. W. Baldwin, who was cashier of the Barb City Bank, of which appellant was sole owner, testified that the sign on the store bearing appellant's name was in plain view from appellant's place of business, and identified a letter offered in evidence signed by himself for Jacob Haish, addressed to the Niagara Ring Manufacturing Co., as follows: "Enclosed find draft for $50 to apply on my account for goods purchased by G. H. Tadd of this city, as requested in your favor of 28th inst." The proof showed that this remittance was made in response to a request by mail from the Niagara Ring Manufacturing Co., to appellant for payment of money on account. The witness testified this letter was written under the directions of appellant.

It was also proved that on January 12, 1898, appellee wrote a letter to the cashier of the Barb City Bank, enclosing a draft drawn on appellant for $169.25 saying, "Please collect same from G. H. Tadd jewelry store and remit in New York exchange." The draft was paid through the Barb City Bank by Mr. Baldwin, at appellant's direction. Numerous other instances might be cited wherein it appears from the evidence that appellant assumed to be the owner of the stock and business. But we think it unnecessary to detail any more of it, and especially so as no testimony was offered by appellant, and appellee's proof stands uncontradicted.

No propositions of law were submitted to the court and the question therefore for our consideration is, whether or not there is sufficient competent evidence in the record to support the judgment.   The cause having been tried by the court without a jury, if there is sufficient competent evidence in the record to sustain the judgment, the fact that there may have been incompetent evidence heard would not justify us in reversing it.

" As the trial was before the court without· a jury, the fact that some incompetent testimony was admitted, is no ground of reversal, when the record shows that there was competent testimony sustaining the finding of the court." Palmer v Meriden Britannia Co., 188 Ill. 508; Schroeder v. Harvey, 75 Ill. 638; Pardridge et al. v. Ryan, 134 Ill. 247.

The judgment of the court below is affirmed.

*Affirmed.*